JOSEPH G. WOJAK,

        Plaintiff,

    vs.

BOROUGH OF GLEN RIDGE, GLEN
RIDGE BOARD OF EDUCATION,
GLEN RIDGE PUBLIC SCHOOLS,
STATE OF NEW JERSEY, TOWN OF
BLOOMFIELD, BLOOMFIELD BOARD
OF EDUCATION, JOHN DOES 1-10,
JANE DOES 1-10, and ABC
CORPORATIONS 1-10,

        Defendants.

Civ. No. 2:16-cv-1605-KM-JBC

OPINION

CHARLES SANDERS, LEE ROTH,
and JOSEPH MAROTTA,

        Plaintiffs,

    vs.

BOROUGH OF GLEN RIDGE, GLEN
RIDGE BOARD OF EDUCATION,
TOWN OF BLOOMFIELD, and
BLOOMFIELD BOARD OF
EDUCATION,

        Defendants.

(consolidated with
2:16-cv-8106-JLL-JAD)

KEVIN MCNULTY, U.S.D.J.:

    Plaintiffs Joseph G. Wojak, Charles Sanders, Lee Roth, and Joseph
Marotta allege that their properties straddle the border that separates the

towns of Bloomfield and Glen Ridge, New Jersey. Sanders, Roth, and Marotta have school-aged children who have been assigned to attend the public schools of Bloomfield. They believe they are entitled to send their children to the public schools of Glen Ridge. Plaintiff Joseph G. Wojak does not have school-aged children, but alleges that the school-assignment policy has decreased the value of his property.

Defendants are the Borough of Glen Ridge, Glen Ridge Board of Education ("Glen Ridge BOE"), Glen Ridge Public Schools, the State of New Jersey, the Township of Bloomfield, and the Bloomfield Board of Education ("Bloomfield BOE"). Plaintiffs allege that defendants' actions constitute a regulatory taking and a denial of due process rights.

Some preliminary observations:

First, the complaints allege that entitlement to attend the Glen Ridge schools, rather than the Bloomfield schools, enhances the value of a property. That proposition is far from self-evident. The Rule 12(b)(6) standard requires, however, that I accept the allegations of the complaints as true for purposes of this motion only.

Second, plaintiffs make no general claim that the inability to attend the school of one's choice in the town of one's choice constitutes a constitutional deprivation. If it did, then *all* the residents of a town would possess a claim that they were deprived of the opportunity to attend the schools of another town. Nor do plaintiffs claim that the State is not entitled to set up school districts and assign schools based on the place of residence. Nor do I understand the plaintiffs to be saying that the local authorities are not entitled to promulgate a rule for dealing with "border" properties. The particular rule here is tied to the "predominate assessed valuation" of the property, but presumably the State or the towns had wide latitude to select a rule based on square footage, mailing address, or any other relevant factor. Plaintiffs here are making the narrower claim that the existing rule was applied erroneously, or that the manner of its application violated their federal rights.

2

# I. BACKGROUND[1]

## A. Allegations of Joseph G. Wojak

On or about January 1, 1929, the Township of Bloomfield and the Borough of Glen Ridge passed resolutions concerning the assessment of taxes for "border properties" that are not entirely within the boundaries of either town. (Wojak AC ¶ 2; Removal Ex. A). In the spring of 1968, plaintiff Joseph G. Wojak ("Wojak") purchased real property commonly known as 26 Stonehouse Road, Glen Ridge, New Jersey 07003 (the "Wojak Address").[2] (Wojak AC ¶ 1). The property at the Wojak Address is specifically mentioned in the January 1, 1929 resolutions. (Wojak AC ¶ 3).

On or about February 15, 1968, Wojak received a letter from the then–Superintendent of Glen Ridge Public Schools, James F. Gray. (Wojak AC ¶ 4; Removal Ex. B). This letter reads, "The residence at 26 Stonehouse Road, Bloomfield, meets the residency requirement of being fifty percent or more within the Borough of Glen Ridge and therefore entitles eligible occupants to enroll in the Glen Ridge Public Schools." (Wojak AC ¶ 4; Removal Ex. B).

---

[1]   All facts and inferences are made in favor of the nonmoving party on a motion to dismiss. Citations to the record are abbreviated as follows:

"Removal" = Notice of Removal to United States District Court (ECF No. 1)

"Consol." = Glen Ridge Board of Education's Notice of Motion to Consolidate 2:16-cv-1605-KM-JBC and 2:16-cv-8106-JLL-JAD (ECF No. 21)

"SRM Compl." = Complaint for Declaratory Relief and Damages by Plaintiffs Charles Sanders, Lee Roth, and Joseph Marotta (ECF No. 21-6)

"Wojak AC" = Joseph G. Wojak's Amended Complaint (ECF No. 24)

"Bloomfield Twp. Br." = Brief on Behalf of Defendant, Township of Bloomfield, in Support of its Notice of Motion to Dismiss (ECF No. 37)

"Glen Ridge Borough Br." = Memorandum of Law in Support of Defendant Borough of Glen Ridge's Motion to Dismiss Plaintiffs' Complaint for Failure to State a Claim or, in the Alternative, for Summary Judgment (ECF No. 40)

[2]   Wojak and one of the plaintiffs in the consolidated case, Lee Roth, both allege that they live at 26 Stonehouse Road, Glen Ridge, New Jersey 07003, *i.e.*, the Wojak Address. (Wojak AC ¶ 1; SRM Compl. ¶ 2). According to the Township of Bloomfield and the Borough of Glen Ridge, Wojak sold this property to Lee Roth. (Bloomfield Twp. Br. 3-4; Glen Ridge Borough Br. 7 & n.4).

Wojak's two children attended the Glen Ridge schools and graduated from Glen Ridge High School in 1980 and 1984. (Wojak AC ¶ 5).

In late 1977 or early 1978, the Borough of Glen Ridge adopted a resolution which stated, in part, "(1) Henceforth the tuition policy of this district shall be strictly enforced as to all non-domiciliary children including those domiciled in residences on the municipal boundary, unless it appears as to a boundary line property that the predominate portion of the assessed valuation is located in this school district." (Wojak AC ¶ 6; Removal Ex. C).

On or about December 6, 1977, George H. Callahan, then–attorney for the Borough of Glen Ridge, sent a letter to Peter N. Perr[e]tti, Jr., then–attorney for the Glen Ridge BOE. (Wojak AC ¶ 7; Removal Ex. D). Callahan addressed the 1977 or 1978 resolution. (Wojak AC ¶ 7; Removal Ex. D). He proposed that notices should be sent to all residents whose children might be excluded from Glen Ridge Schools; he mentioned that all objecting residents could appeal to the county superintendent of education, in accordance with the procedures outlined by the State BOE. (Wojak AC ¶ 8; Removal Ex. D).

Wojak says he was never notified of any resolution or hearing proposal affecting his property rights. (Wojak AC ¶¶ 9, 12). At the time he filed the original complaint in March 2016, Wojak was planning to sell his home. (Wojak AC ¶ 10; Removal ¶ 2). It was then that he learned that the occupants of the Wojak Address no longer had the right to send children living there to Glen Ridge schools; any resident children would be assigned to the Bloomfield schools. (Wojak AC ¶¶ 10-11). Wojak alleges that his property is worth significantly less as a result of the change in school-district assignment. (Wojak AC ¶ 18).

This diminution in value, Wojak claims, amounts to an unconstitutional taking and denial of due process. (Wojak AC ¶ 17). He filed a civil action in Essex County Superior Court, Law Division on or about March 1, 2016. (Removal ¶ 2). The Glen Ridge BOE then removed this case to the U.S. District Court for the District of New Jersey. (Removal).

4

Count 1 of Wojak's amended complaint claims a denial of due process rights under the Fourteenth Amendment of the U.S. Constitution. (Wojak AC 1/¶¶ 1-10).[3] Count 2 alleges that the change in school district assignment constitutes a regulatory taking under the Fourteenth Amendment. (Wojak AC 2/¶¶ 1-7).

### B. Allegations of Charles Sanders, Lee Roth, and Joseph Marotta

Wojak's case has been consolidated with a related case brought by plaintiffs Charles Sanders, Lee Roth, and Joseph Marotta. (Consol.). Plaintiff Charles Sanders ("Sanders") owns real property known as 16 Stonehouse Road, Glen Ridge, New Jersey 07028. (SRM Compl. ¶ 1). Plaintiff Lee Roth ("Roth") now owns real property known as 26 Stonehouse Road, Glen Ridge, New Jersey 07028 (*i.e.*, the Wojak Address). (SRM Compl. ¶ 2). Plaintiff Joseph Marotta ("Marotta") owns the real property known as 20 Stonehouse Road, Glen Ridge, New Jersey 07028. (SRM Compl. ¶ 3).

Sanders, Roth, and Marotta all own border properties and reside in dwelling spaces which they say are primarily situated in the Borough of Glen Ridge. (SRM Compl. ¶ 4). However, they are required to pay taxes to Bloomfield and enroll their children in Bloomfield schools. (SRM Compl. ¶ 4). Sanders, Roth, and Marotta—and the previous owners of the properties—allegedly were not afforded an opportunity to address their "irregular situation" with defendants. (SRM Compl. ¶¶ 6-7).[4] These plaintiffs seek to pay taxes to Glen Ridge and enroll their children in Glen Ridge schools. (SRM Compl. ¶ 8). Count 1 of their complaint alleges a due process violation. (SRM Compl. ¶¶ 12-16). Count 2 alleges a regulatory taking. (SRM Compl. ¶¶ 17-21). These plaintiffs seek damages, a declaration that their property is situated in the Borough of

---

[3]     Each of the two causes of action in Wojak's amended complaint is separately, rather than sequentially numbered. For example, I will cite Count 1, ¶ 2 as "Wojak AC 1/¶ 2."

[4]     According to the Township of Bloomfield, Sanders, Roth, and Marotta all necessarily purchased their properties with the knowledge that the assigned school district was Bloomfield. (Bloomfield Twp. Br. 4).

Glen Ridge, and a declaration that the children residing with them are eligible to enroll in Glen Ridge schools. (SRM Compl.).

Glen Ridge BOE moved to consolidate the Sanders, Lee, Marotta litigation with the Wojak litigation on January 13, 2017. (Consol.). I granted that unopposed motion on March 21, 2017. (ECF No. 26).

### C. Cross Claims and Counterclaim

On April 5, 2016, Glen Ridge BOE filed cross claims against the other defendants. (ECF No. 4). On May 11, 2016, the Borough of Glen Ridge filed cross claims the other defendants, and also filed a counterclaim against Wojak "for the value of the benefits conferred upon [Wojak] for [Wojak]'s use of the Glen Ridge public schools without payment of taxes or tuition in lieu thereof."[5] (ECF No. 9). On March 27, 2017, the Bloomfield BOE filed cross claims against all defendants for contribution and indemnification. (ECF No. 27).

## II.   LEGAL STANDARDS

### A. Rule 12(b)(6) Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Animal Sci. Prods., Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n.9 (3d Cir. 2011). For the purposes of a motion to dismiss, the facts alleged in the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. *New Jersey Carpenters & the Trs. Thereof v. Tishman Constr. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014).

Federal Rule of Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will

---

[5]     Apparently the reference is to Wojak's children having attended the Glen Ridge schools over 30 years ago.

not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570; *see also West Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank*, 712 F.3d 165, 169 (3d Cir. 2013). That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' ... it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678.

### B. Rule 12(b)(1) Standard

A motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure Rule 12(b)(1) may be raised at any time. *Iwanowa v. Ford Motor Co.*, 67 F. Supp. 2d 424, 437-38 (D.N.J. 1999). Rule 12(b)(1) challenges are either facial or factual attacks. See 2 James Wm. Moore, Moore's Federal Practice § 12.30[4] (3d ed. 2007). The defendant may facially challenge subject matter jurisdiction by arguing that the complaint, on its face, does not allege sufficient grounds to establish subject matter jurisdiction. *Iwanowa*, 67 F. Supp. 2d at 438. Under the "facial" 12(b)(1) standard, as under Rule 12(b)(6), the allegations of the complaint are assumed to be true. *Id.*

I construe the State of New Jersey's arguments for dismissal based on sovereign immunity as a facial challenge to the amended complaint's jurisdictional basis. Accordingly, for these purposes the Court will take the allegations of the complaint as true. *See Gould Elecs., Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

### III.   DISCUSSION

Section III.A discusses the regulatory takings claims. Section III.B discusses the due process claims.

#### A. Regulatory Takings

##### i.      Standards

The Takings Clause of the Fifth Amendment provides that private property shall not "be taken for public use, without just compensation." U.S. Const. amend. V. This Clause is applicable to the States through the Fourteenth Amendment. *See Chicago, B. & Q.R. Co. v. Chicago*, 166 U.S. 226 (1897); *see also Murr v. Wisconsin*, 137 S. Ct. 1933, 1942 (2017). Under the Takings Clause, it is clear that the government must provide compensation when the government physically takes or permanently occupies property. *See Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 321 (2002); *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982). The Takings Clause itself "does not address in specific terms the imposition of regulatory burdens on private property." *Murr*, 137 S. Ct. at 1942.

Nonetheless, the Supreme Court has held that regulations "can be so burdensome as to become a taking." *Id.* This area of the law has been characterized by "ad hoc, factual inquiries, designed to allow careful examination and weighing of all the relevant circumstances." *Tahoe-Sierra*, 535 U.S. at 322 (internal citation and quotation marks omitted). Regulatory takings jurisprudence seeks to balance two competing objectives. One objective is "the individual's right to retain the interests and exercise the freedoms at the core of private property ownership." *Murr*, 137 S. Ct. at 1943; *see Lucas v. S. Carolina Coastal Council*, 505 U.S. 1003, 1028 (1992). The other is "the government's well-established power to 'adjus[t] rights for the public good." *Murr*, 137 S. Ct. at 1943 (citing *Andrus v. Allard*, 444 U.S. 51, 65 (1979). In general, "while property may be regulated to a certain extent, if the regulation goes too far it will be recognized as a taking." *Pa. Coal Co. v. Mahon*, 290 U.S. 393, 415 (1922).

Not every land-use regulation or zoning change that impacts property value is considered a regulatory taking; in fact, most are not. "Land-use regulations are ubiquitous and most of them impact property values in some tangential way—often in completely unanticipated ways. Treating them all as *per se* takings would transform government regulation into a luxury few

governments could afford." *Tahoe-Sierra*, 535 U.S. at 324. As the Supreme Court explained in *Penn Central*,

> "Government hardly could go on if to some extent values incident to property could not be diminished without paying for every such change in the general law," *Pennsylvania Coal Co. v. Mahon*, 260 U.S. [at 413], and this Court has accordingly recognized, in a wide variety of contexts, that government may execute laws or programs that adversely affect recognized economic values.

*Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 124 (1978). For instance, in *United States v. Willow River Power Co.*, the government erected a dam that caused a three-foot increase in a river's water level. 324 U.S. 499, 509-11 (1945). The change in water level decreased the capacity of a power plant. *Id.* The Supreme Court found that this did not constitute a "taking of private property" under the Takings Clause. *Id. Hadacheck v. Sebastian* found that a diminution in value from $800,000 to $60,000, caused by a prohibition of brickmaking within a designated area, did not constitute a taking. 239 U.S. 394 (1915); *see Goldblatt v. Hempstead*, 369 U.S. 590, 594 (1962). In *Tahoe-Sierra*, a thirty-two-month moratorium on development in the Lake Tahoe area was ordered by an environmental planning agency to maintain the status quo while studying the impact of any development on the environment. 535 U.S. at 321. This did not constitute a compensable "taking" either. *Id. Penn Central* held the New York City Landmarks Preservation Commission's refusal to approve plans for an approximately fifty-story office building over Grand Central Terminal did not constitute a taking, even though an office building would have yielded more profits. 438 U.S. at 116-117.

The Supreme Court's *Penn Central* framework is used to evaluate whether a regulatory burden constitutes a taking:

> First, with certain qualifications ... a regulation which denies all economically beneficial or productive use of land will require compensation under the Takings Clause. Second, when a regulation impedes the use of property without depriving the owner of all economically beneficial use, a taking still may be found based

on a complex of factors, including (1) the economic impact of the
regulation on the claimant; (2) the extent to which the regulation
has interfered with distinct investment-backed expectations; and
(3) the character of the governmental action.

*Murr,* 137 S. Ct. at 1942-43 (internal citations and quotation marks omitted);
*see Palazzolo v. Rhode Island,* 533 U.S. 606, 617 (2001); *Lucas,* 505 U.S. at
1015; *Penn Cent.,* 438 U.S. at 124.

I will first address the regulatory takings claims of Sanders, Roth, and
Marotta. I will then turn to Wojak's claim.

### ii. Regulatory Takings: Sanders, Roth, and Marotta

The regulatory takings claims of Sanders, Roth, and Marotta are not ripe
for adjudication.

A takings claim may be "facial" or "as-applied." A facial takings claim
challenges a regulation as constituting a taking by its plain language. *See
Suitum v. Tahoe Reg'l Planning Agency,* 520 U.S. 725, 736 n.10 (1997); *see
Keystone Bituminous Coal Ass'n v. DeBenedictis,* 480 U.S. 470, 495 (1987).
Thus a facial challenge may attack an enactment that, by its existence, "denies
an owner economically viable use of his land." *Hodel v. Va. Surface Mining &
Reclamation Ass'n, Inc.,* 452 U.S. 264, 295-96 (1981) (citing *Agins v. Tiburon,*
447 U.S. 255, 260 (1980)). Such a facial taking will succeed only if the
regulation does not "substantially advance" a "legitimate state interest" no
matter how it is applied. *See Yee v. City of Escondido,* 503 U.S. 519, 534
(1992). Facial challenges are immediately ripe. *See Suitum,* 520 U.S. at 736
n.10.

Far more common is an "as-applied" takings challenge. An owner
bringing such a challenge attacks the decision that applied the regulation to
his or her property—not the regulation in general. *See Cty. Concrete Corp. v.
Twp. of Roxbury,* 442 F.3d 159, 164 (3d Cir. 2006).

This case does not involve a facial challenge. Sanders, Roth, and Marotta
do not attack the school-assignment policy as a facially invalid exercise of state

10

power. That is, they do not seem to assert that the state could not permissibly base school assignment on predominate property tax assessment. At any rate, a takings claim based on the State's having chosen that criterion, rather than some other, would fail. These plaintiffs retain an economically viable use of their property; they are able to reside in their homes, use their land, sell their property, and send their children to public school.

Rather, Sanders, Roth, and Marotta challenge the determination that *their* residences do not qualify them to send children to Glen Ridge schools. They claim that their properties should be taxed by Glen Ridge and, accordingly, their children should be assigned to Glen Ridge schools. That is properly viewed as an "as-applied" challenge. *See Winters ex rel. Stassart v. Lakeside Joint Sch. Dist.*, No. C 08-1511, 2008 WL 4937812, at *3 (N.D. Cal. Nov. 17, 2008) (finding that an objection to an agreement changing where a student attends school to be an as-applied taking).

"[A] claim that the application of government regulations effects a taking of a property interest is not ripe" unless (1) "the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue" and (2) the plaintiffs have sought "compensation through the procedures the State has provided for doing so." *Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 186-87, 194 (1985); *see also id.* at 194 ("The Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation."); *Hodel*, 452 U.S. at 297 n.40 ("[A]n alleged taking is not unconstitutional unless just compensation is unavailable."). "The ripeness doctrine serves 'to determine whether a party has brought an action prematurely and counsels abstention until such time as a dispute is sufficiently concrete to satisfy the constitutional and prudential requirements of the doctrine.'" *Cty. Concrete Corp.*, 442 F.3d at 164 (citing *Khodara Envtl., Inc. v. Blakey*, 376 F.3d 187, 196 (3d Cir. 2004) (quoting *Peachlum v. City of York*, 333 F.3d 429, 433 (3d Cir. 2003))).

The second requirement, in particular, ensures that the plaintiffs have actually pled a takings claim. *Suitum* explained:

> The second [ripeness requirement] stems from the Fifth Amendment's proviso that only takings without "just compensation" infringe that Amendment; "if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used that procedure and been denied just compensation."

520 U.S. at 734 (quoting *Williamson*, 473 U.S. at 195). For instance, in *Hodel*, the Supreme Court rejected a claim that the Surface Mining Control and Reclamation Act constituted a taking because there was "no indication in the record that the appellees have availed themselves of the opportunities provided by the Act to obtain administrative relief" such as a waiver or a variance. 452 U.S. at 297.

In this case, the State of New Jersey has in place appropriate procedures for challenging a determination that a student is ineligible to attend a particular public school. The applicable regulations provide for such a challenge:

> An applicant may appeal to the Commissioner [of Education] a school district determination that a student is ineligible to attend its schools. Appeals shall be initiated by petition, which shall be filed in accordance with N.J.S.A. 18A:38-1 and N.J.A.C. 6A:3-8.1 and shall proceed as a contested case pursuant to N.J.A.C. 6A:3.

N.J. Admin. Code § 6A:22-5.1 (2016).

Sanders, Roth, and Marotta have not availed themselves of this procedure. They have not pursued state appeals and remedies to either reverse the decision or obtain just compensation for the alleged taking. They therefore fail the *Williamson* test. These plaintiffs state that their representative has contacted defendants "to discuss how or why this irregular situation exists." (SRM Compl. ¶ 6). But initiation of a discussion is not equivalent to the

invocation of the appropriate procedures for appealing such a determination in the State of New Jersey.

The state's decision is therefore not "final," or, viewed in the alternative, is subject to state procedures in which relief may be awarded. *See Williamson, supra.* Sanders, Roth, and Marotta have an avenue for an appeal, and possible reversal, of the decision to exclude eligible school-aged children living at their residences from Glen Ridge schools. An appeal may remedy the claims asserted in the operative complaint. At the very least it may correct any error of state law and thereby moot any takings claim. Until these plaintiffs have in hand an adverse decision from the state authorities that is final, their takings claims are not ripe for adjudication. *See Winters*, 2008 WL 4937812, at *3-4.

### iii. Regulatory Takings: Wojak

Wojak's takings claim stands on a somewhat different footing.

First, he states that he cannot seek reversal of a school assignment under New Jersey Administrative Code section 6A:22-5.1 because there are no school-aged children at his residence. (Wojak AC ¶ 5). Second, Wojak appears to have already sold his house.[6] Even if he currently had standing to pursue such an appeal, Wojak could not obtain meaningful relief, which would be forward-looking and of no use to him. Taking the view of "finality" most favorable to Wojak's claim, *i.e.*, that he currently possesses at best a claim for damages for a past injury, I will address the merits of whether defendants' actions constituted a regulatory taking of Wojak's property.

Wojak alleges that the defendants' actions have "substantially diminished [his] Property value due to the fact that residents of the Property

---

[6]     Another plaintiff, Roth, reports the same address, and defendants (who would have reason to be familiar with the public record) state that Wojak sold his property to Roth. *See supra* n.4; see also (Wojak AC ¶ 1; SRM Compl. ¶ 2; Bloomfield Twp. Br. 3 4; Glen Ridge Borough Br. 7 & n.4). Assuming Wojak has sold the property to Roth, his claim would be that he has already suffered the effects of that diminution in value. That might cast an interesting light on the claim of Roth, the purchaser (who by hypothesis paid a diminished price for the property), but I need not consider that issue here.

cannot attend [Glen Ridge] schools." (Wojak AC ¶ 2/7). His property value would be greater, he says, if children living at the Wojak Address were entitled to attend the schools of Glen Ridge, as opposed to those of Bloomfield.

Standing alone, mere diminution in value because of a land-use or zoning regulation does not constitute a taking. *Penn Cent.*, 438 U.S. at 131. As discussed above, "Government hardly could go on if to some extent values incident to property could not be diminished without paying for every such change in the general law." *Mahon*, 260 U.S. at 413.

It is true, as established above, that a very drastic diminution of property value may constitute a taking. For instance, in *Pennsylvania Coal Co. v. Mahon*, the claimant sold the surface rights to land but expressly reserved the right to remove the coal under the land. 260 U.S. at 412. Pennsylvania passed a statute, however, that made it commercially impracticable to mine. *Id.* at 414-15. This was considered a taking without just compensation because the statute completely destroyed the claimant's property rights. *Id.*; *see Armstrong v. United States*, 364 U.S. 40 (1960) (holding that the complete destruction of all value of materialmen's liens on hulls and manufacturing materials constituted a taking).

> When as a result of governmental actions the diminution in the value of land reaches a "certain magnitude," the [Supreme] Court has held that compensation must be paid. Although it has never attempted to delineate what constitutes a "certain magnitude," the Court has required compensation only in cases in which the value of the property was reduced drastically. In *Penn Central*, for example, the Court sustained the application of the Landmarks Preservation Law despite the fact that the legislation denied the claimants income that would have been generated by a fifty-five story office building in midtown Manhattan. The Court also cited approvingly cases in which the challenged law had reduced the value of the land by as much as seventy-five and eighty-seven percent.

*Rogin v. Bensalem Twp.*, 616 F.2d 680, 691-92 (3d Cir. 1980) (footnotes omitted).

In *Rogin*, the Third Circuit held that a diminution in value from three million dollars to two million dollars, caused by the application of zoning amendments, did not establish a regulatory takings claim. 616 F.2d at 692. In *Village of Euclid v. Ambler Realty Co.*, the Supreme Court found that a 75% diminution in value did not constitute a taking. 272 U.S. 365 (1926). And in *Hadacheck v. Sebastian*, the Supreme Court found that an 87.5% diminution in value did not constitute a taking. 239 U.S. 394 (1915); *see also Penn Cent.*, 438 U.S. at 127-28. The Supreme Court has also stated that the government "may limit the height of buildings in a city, without compensation.... But if it should attempt to limit the height so far as to make an ordinary building lot wholly useless, the rights of property would prevail over the other public interest, and the police power would fail." *Hudson Cty. Water Co. v. McCarter*, 209 U.S. 349, 355 (1908). Therefore, any claim for a regulatory taking must allege a drastic loss of property value.

Wojak's complaint alleges only that, as a result of the switch in school assignment, his property "is worth significantly less." (Wojak AC ¶ 15; *see also id.* 2/¶7 ("substantially diminished" property value)). That is not, under the standards of *Twombly/Iqbal*, a plausible allegation that the diminution in value has reached that "certain magnitude"—a very drastic magnitude, depriving the owner of the reasonable use of the property—that would rise to the level of a compensable regulatory taking.

If I could read the factual allegations of the complaint in a commonsense manner to support the necessary inference, I would not fault the complaint for failure to use the magic words. I cannot assume or infer, however, that the "significant" reduction in value alleged here is so great as to approach even the drastic impacts on property values that the Supreme Court and Third Circuit have found do *not* reach the level of takings.

Wojak's regulatory takings claim is thus dismissed. This dismissal is without prejudice, however, to submission of an amended complaint that alleges a sufficiently drastic diminution in value with the requisite specificity.

### B. Due Process Allegations

Plaintiffs allege that the defendants violated their due process rights. I will first address the due process claims of Sanders, Roth, and Marotta, and then those of Wojak.

#### i. Due Process: Sanders, Roth, and Marotta

Sanders, Roth, and Marotta allege that the Fourteenth Amendment "entitle[s] Plaintiffs to due process, which would include procedural due process in the event individuals such as Plaintiffs are excluded from a claim to membership in a class of citizens receiving a government sponsored education." (SRM Compl. ¶ 13). The nature of the claim seems to be, not that the existing school-assignment regulation is improper in itself, but that they were arbitrarily and erroneously deprived of their entitlement under the regulation to attend Glen Ridge schools. They claim a procedural due process violation.

"[W]ithout a constitutionally recognized property or liberty interest, there is no need for further inquiry on the due process question" and there is no potential for relief under the provisions of 42 U.S.C. § 1983. *Mullen*, 31 F. App'x at 79-80. The issue here is whether the plaintiffs' interest in being assigned to one school district, rather than another, gives rise to a constitutionally protected property or liberty interest.

New Jersey is not obligated by the U.S. Constitution to establish and maintain a public school system. *See Goss v. Lopez*, 419 U.S. 565, 574 (1975). But it does. New Jersey guarantees a free public education to all children in the State. *See* N.J. Const. art VIII § IV, cl. 1 ("The Legislature shall provide for the maintenance and support of a thorough and efficient system of free public schools for the instruction of all the children in the State between the ages of five and eighteen years."); *cf. Mullen v. Thompson*, 31 F. App'x 77, 79 (3d Cir. 2002). That guarantee may give rise to a property interest protected by the Due Process Clause. *See id.*; *cf. Rogowski v. New Hartford Cent. Sch. Dist.*, 730 F. Supp. 1202, 1206 (N.D.N.Y. 1990).

The entitlement to a free public education, however, has never been held to encompass the right to attend a specific school. *See Mullen*, 31 F. App'x at 79; *cf. Rogowski*, 730 F. Supp. at 1206. "Plaintiffs have no constitutionally cognizable property or liberty interest in attending the individual school of their choice." *Mullen*, 31 F. App'x at 79. That is generally a matter of state law. Residency regulations determine *where* a New Jersey student will receive his or her free public education.

First, students may enroll for free in the district in which they are domiciled. N.J. Admin. Code § 6A:22-3.1(a) (2016). That is not in dispute.

The dispute here arises from the regulations that govern "border" cases:

> When a student's dwelling is located within two or more school districts, or bears a mailing address that does not reflect the dwelling's physical location within a municipality, the school district of domicile for school attendance purposes shall be the municipality to which the majority of the dwelling's or unit's property tax is paid.

N.J. Admin. Code § 6A:22-3.1(b) (2016). If the property tax is paid in equal amounts to two or more municipalities and there is no other established assignment system for such situations, "the school district of domicile for school attendance purposes shall be determined through assessment of individual proofs of eligibility provided pursuant to N.J.A.C. 6A:22-3.4." N.J. Admin. Code § 6A:22-3.1(b)(1) (2016).

If a parent disagrees with the school district's determination, there is an appeal process. In particular, an applicant who is dissatisfied with "a school district determination that a student is ineligible to attend its schools" may appeal to the Commissioner of Education. N.J. Admin. Code § 6A:22-5.1 (2016).

New Jersey, then, has rules to determine in which district each child will receive an education, and has established regular procedures to adjudicate disputes under those rules. If an error has been committed, there are procedures for challenging school assignment decisions. Not every error of state

law gives rise to a constitutional claim, however. Some violation of due process must be found. Where no procedural flaw has been identified, and where parents have not availed themselves of the available procedures to correct any error, there has been no deprivation without due process of law.

As the Supreme Court has provided,

> The Due Process Clause also encompasses ... a guarantee of fair procedure. A § 1983 action may be brought for a violation of procedural due process, but here the existence of state remedies is relevant in a special sense. In procedural due process claims, the deprivation by state action of a constitutionally protected interest in "life, liberty, or property" is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law. The constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process.

*Zinermon v. Burch*, 494 U.S. 113, 125-26 (1990) (internal citations omitted). Thus, there is no procedural due process cause of action under section 1983 when a post-deprivation state remedy exists, unless the plaintiff challenges the adequacy or fundamental fairness of the state remedy. *See Parratt v. Taylor*, 451 U.S. 527, 543-44 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986); *see also Daniels*, 474 U.S. at 339; *Ragland v. Comm'r N.J. Dep't of Corr.*, ___ F. App'x ___, 2017 WL 5900556, at *1 (3d Cir. Nov. 30, 2017); *Nicholson v. Carroll*, 390 F. Supp. 2d 429, 435 (D. Del. 2005). Sanders, Roth, and Marotta have not yet availed themselves of the available state remedy and therefore do not state a claim under section 1983.

I will therefore grant the motion to dismiss the due process claims of Sanders, Roth, and Marotta, without prejudice to a motion to amend their complaint.

### ii. Wojak's Due Process Claims

Wojak alleges due process claims similar to those of the other plaintiffs. He also alleges, however, that his property formerly carried with it the right to attend Glen Ridge public schools, and alleges that the school assignment was

changed without due process protections, such as notice and a hearing. (Wojak AC 1/¶¶ 1-10).

I first consider Wojak's claims to the extent they overlap with those of the other plaintiffs. He does not have a regulatory takings claim against defendants for the alleged diminution of his property value. *See supra* subsection III.A.ii. He does not have a general property right to send school-aged children to the school of his choice. *See supra* subsection III.B.i; *Mullen*, 31 F. App'x at 79; *cf. Rogowski*, 730 F. Supp. at 1206. For the same reasons stated above, Wojak has not alleged a cognizable liberty or property interest and therefore there is no violation of due process or potential for relief under 42 U.S.C. § 1983. *See Mullen*, 31 F. App'x at 79-80; *see also Paul v. Davis*, 424 U.S. at 711-12.

Wojak's situation does differ from that of the other plaintiffs, however, in one respect. He states that, as an occupant of the property at the Wojak Address, he was formerly entitled to send children to the Glen Ridge Schools, and attaches official correspondence to that effect. He alleges that the school district assignment of the Wojak Property was changed pursuant to a 1977-78 resolution of the Town of Glen Ridge. Nevertheless, in the 1980s his children graduated from the Glen Ridge Schools. He states that he received no notice of any reclassification of his property, or the basis therefor. This, he alleges, deprived him of the opportunity to challenge what he says was an erroneous decision. If, as alleged, that procedural opportunity was denied him, Wojak might have a cause of action for deprivation of that procedural opportunity.

Such a claim faces some factual hurdles, to be sure. Among other things, Wojak might have to demonstrate the level of notice required by the due process clause, and prove that the authorities failed to provide notice. The damages that may have resulted from such a procedural deprivation remain to be proven as well. These are matters of fact, however, which can be developed in discovery.

The motion of the local governmental defendants to dismiss Wojak's due process claim is therefore denied.

### C. State of New Jersey

Because Wojak's procedural due process claim survives as to the local governmental defendants, I consider whether it also may be asserted against defendant the State of New Jersey. I conclude that the due process claim, insofar as it is asserted against the State, is barred by sovereign immunity.

Sovereign immunity provides that states are not amenable to suits from individuals without their consent. *Seminole Tribe of Florida v. Florida*, 517 U.S. 44 (1996). This principle is based in the Eleventh Amendment of the U.S. Constitution, which provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. As explained in *Seminole Tribe*, the Eleventh Amendment, despite its limited wording, embodies two more general principles of immunity:

> [F]irst, that each State is a sovereign entity in our federal system; and second, that [i]t is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent. For over a century we have reaffirmed that federal jurisdiction over suits against unconsenting States was not contemplated by the Constitution when establishing the judicial power of the United States.

517 U.S. at 54 (internal citations and quotation marks omitted). The underlying purpose of sovereign immunity "is to accord States the dignity that is consistent with their status as sovereign entities." *Fed. Maritime Comm'n v. S.C. State Ports. Auth.*, 535 U.S. 743, 760 (2002) (internal quotations omitted).

There are limits to state sovereign immunity. It can be abrogated by Congress, but "Congress' intent to abrogate ... must be obvious from 'a clear legislative statement.'" *Seminole Tribe*, 517 U.S. at 55 (citing *Blatchford v. Native Village of Noatak & Circle Village*, 501 U.S. 775, 786 (1991)). States can also waive sovereign immunity by action or by law. *See Lapides v. Bd. of*

*Regents of Univ. Sys. of Ga.*, 535 U.S. 613 (2002). An individual may also sue a state official under *Ex parte Young* "when that suit seeks only prospective injunctive relief to 'end a continuing violation of federal law.'" *Seminole Tribe,* 517 U.S. at 73 (citing *Green v. Mansour*, 474 U.S. 64, 68 (1985)); *see Ex parte Young*, 209 U.S. 123 (1908); *see also Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89 (1984).

Wojak's procedural due process claim against the State of New Jersey is barred by sovereign immunity.[7] First, Congress did not abrogate state sovereign immunity when it enacted Section 1983:

> Section 1983 ... does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivation of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity, or unless Congress has exercised its undoubted power ... to override that immunity.

*Will v. Mich. Dept. of State Police,* 491 U.S. 58, 66 (1989); *see also Quern v. Jordan*, 440 U.S. 332, 341 (1979) (holding that Section 1983 does not abrogate state sovereign immunity). Second, New Jersey has not waived its sovereign immunity by word or conduct in this case. Third, Wojak does not bring an *Ex parte Young* action against an official for prospective relief; he brings an action for damages, which is barred by sovereign immunity. *See Green v. Mansour,* 474 U.S. 64, 68-69 (1985).

For those reasons, Wojak's procedural due process claim against the State of New Jersey is dismissed because of sovereign immunity. The State of New Jersey is thus dismissed from the case.

## IV.  CONCLUSION

For the foregoing reasons, the complaints for the most part fail to state a claim.

As for regulatory takings, the claims of Sanders, Roth, and Marotta are not ripe because they have not availed themselves of state remedies and the

---

[7]  There is no need to address state sovereign immunity in the context of Wojak's takings claim, which was dismissed in subsection III.A.ii, *supra.*

decisions they challenge are not final. Wojak, too, fails to state a claim for a regulatory taking.

As for due process, the claims of Sanders, Roth, and Marotta will be dismissed for failure to allege the deprivation of an established liberty or property interest. Wojak's claim, too, is dismissed except for his due process claim that he was deprived of notice and an opportunity to be heard in connection with the change of his property's school-district classification.

An appropriate order accompanies this opinion.

Dated: February 15, 2018

**KEVIN MCNULTY**
**United States District Judge**